UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NESIBA O.,

                Plaintiff,

v.                                                    5:17-cv-0931
                                                      (TWD)
COMM'R OF SOC. SEC.,

                Defendant.
_____

APPEARANCES:                                                    OF COUNSEL:

MEGGESTO, CROSSETT & VALERINO, LLP         KIMBERLY A. SLIMBAUGH,
  Counsel for Plaintiff                                          ESQ.
313 East Willow Street Suite 201
Syracuse, NY 13203

U.S. SOCIAL SECURITY ADMIN.                       DAVID B. MEYERS, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## **DECISION and ORDER**

       Currently before the Court, in this Social Security action filed by Nesiba O. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 9 and 12.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

I.      RELEVANT BACKGROUND

   A.      Factual Background

Plaintiff was born in 1964, making her 49 years old at the amended alleged onset date and 52 years old at the date of the ALJ's decision. She reported completing the eighth grade, and has previous work as an assembler. At the initial application level, Plaintiff alleged disability due to carpal tunnel syndrome, hypertension, and post-traumatic stress disorder ("PTSD").

   B.      Procedural History

Plaintiff applied for a period of disability and disability insurance benefits ("DIB") as well as Supplemental Security Income on September 17, 2013, alleging disability beginning April 20, 2012. Plaintiff's applications were initially denied on December 18, 2013, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). She appeared at an administrative hearing before ALJ Jennifer Gale Smith on June 3, 2015. (T. 61-91.)[1] At the hearing, Plaintiff amended her alleged onset date to the day before her fiftieth birthday in 2014. (T. 88, 339.) The ALJ issued a fully favorable decision to Plaintiff on June 17, 2015. (T. 114-25.) On December 1, 2015, the Appeals Council concluded that substantial evidence did not support the overall finding for disability, vacated the ALJ's decision, and remanded the case for further proceedings. (T. 126-32.) The Appeals Council indicated that upon remand, the ALJ should obtain additional evidence concerning Plaintiff's severe impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence, obtain supplemental evidence from a vocational

---

[1]     The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

expert ("VE") to clarify whether the assessed limitations were more reflective of medium or light level exertion and the effect of the assessed limitations on the applicable occupational base, offer Plaintiff an opportunity for a hearing, take any further action needed to complete the administrative record, and issue a new decision. (T. 130-31.) Plaintiff subsequently appeared at a second administrative hearing before the ALJ on August 25, 2016. (T. 39-60.) On November 23, 2016, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 10-38.) On July 14, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's November 2016 decision the final decision of the Commissioner. (T. 1-5.)

### C. The ALJ's November 2016 Decision

The ALJ made the following findings of fact and conclusions of law: (1) Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017, and has not engaged in substantial gainful activity since the amended alleged onset date; (2) Plaintiff's PTSD, depression, carpal tunnel of the right wrist, obesity, and complex regional pain syndrome of the right shoulder are severe impairments, but Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"); (3) Plaintiff has the following residual functional capacity ("RFC"):

> claimant can frequently lift and carry up to 20 pounds; the claimant can occasionally lift and carry between 21 and 50 pounds; the claimant can sit for eight hours in an eight-hour day and for eight hours at a time; the claimant can stand for eight hours in an eight-hour day and for four hours at a time; the claimant can walk for eight hours in an eight-hour day and four hours at a time; the claimant is right-hand dominant and can frequently reach overhead, handle, finger, push and pull up to the weight limits contained herein with her right arm and hand; the claimant can continuously reach in all other directions other than overhead and feel with her right arm and

3

hand; the claimant can continuously reach, handle, finger, feel, and push and pull up to the weight limits contained herein with her left arm and hand; the claimant can continuously operate foot controls; the claimant can occasionally climb ramps and stairs, climb ladders and scaffolds, balance, kneel, crouch, and crawl; the claimant should not operate a motor vehicle and be exposed to humidity and wetness; the claimant should have no more than occasional exposure to vibrations and respiratory irritants such as dust, odors, fumes and gases, and extreme hot and cold temperatures, unprotected heights, and moving mechanical parts; the claimant should work in a moderate noise environment or less; the claimant should work at simple, routine, repetitive tasks; the claimant should work in a low-stress job, defined as occasional decision-making, occasional judgment required, and occasional changes in the work setting; the claimant should perform goal-oriented work and not production-pace rate work; and the claimant should have occasional contact with co-workers, supervisors, and the public[;]

(4) Plaintiff is unable to perform any past relevant work; and (5) there are jobs existing in significant numbers in the national economy Plaintiff can perform. (T. 16-31.) The ALJ therefore concluded Plaintiff is not disabled.

D.   **The Parties' Contentions**

Plaintiff claims the ALJ erred in determining Plaintiff is not disabled because (1) the VE's testimony regarding the jobs she could perform do not comport with her RFC which limits her to simple, routine, repetitive tasks; (2) the opinion evidence of her treating psychiatrist was not properly evaluated; (3) the record was not properly developed; and (4) the credibility determination was incorrect. (Dkt. No. 9 at 11-19. [2]) Defendant contends the ALJ's determination is supported by substantial evidence and correct legal standards were applied because the treating psychiatrist's opinion was properly discounted, Plaintiff's credibility was properly evaluated, and the Step Five determination was appropriate. (Dkt. No. 12 at 6-17.)

---

[2]   Page references to the parties' briefs identified by docket number are to the numbers assigned by the Court's CM/ECF electronic docketing system.

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of

the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Substantial Evidence Supports the ALJ's Analysis of the Opinion Evidence and Plaintiff's RFC

The Second Circuit has long recognized the "treating physician rule" set out in 20 C.F.R. §§ 404.1527(c), 416.927(c). "[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

"An ALJ should consider 'all medical opinions received regarding the claimant.'" *Reider v. Colvin*, 15-CV-6517P, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)). "The ALJ is not permitted to

7

substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek*, 802 F.3d at 375 (citing *Burgess*, 537 F.3d at 131). In assessing a plaintiff's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because such consultants are qualified experts in the field of social security disability. *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).

In December 2013, consultative examiner Dennis Noia, Ph.D., noted Plaintiff reported symptoms of depression and anxiety including occasional dysphoric moods, crying spells, some loss of usual interests, fatigue, loss of energy, occasional restlessness, flashbacks, and frequent nightmares related to losing her husband and many relatives during the war in Bosnia. (T. 482.) Dr. Noia diagnosed PTSD and opined Plaintiff appeared to have no limitations in understanding and following simple instructions and directions, performing simple or complex tasks, maintaining attention and concentration for tasks, attending to a routine, maintaining a schedule, learning new tasks, or making appropriate decisions. (T. 483-84.) He also opined Plaintiff had moderate limitations regarding her ability to deal with stress. (T. 484.) Plaintiff appeared to be able to relate to and interact well with others. *Id*. Dr. Noia noted the difficulties were caused by psychiatric problems and the results of the examination appeared to be consistent with

8

psychiatric problems which at times might interfere with Plaintiff's ability to function on a daily basis. *Id*.

The ALJ afforded the most weight to Dr. Noia's opinion, finding support in the record for this opinion. (T. 26-27.) The ALJ noted she gave less weight to Dr. Noia's determination that there appeared to be moderate limitations regarding Plaintiff's ability to deal with stress because it was clear that this portion of the opinion was based solely on Plaintiff's subjective report rather than any objective or contemporaneous findings made by Dr. Noia in his one-time examination. (T. 27.) The ALJ indicated this portion of Dr. Noia's opinion regarding Plaintiff's limitations in her ability to deal with stress was considered by the ALJ in limiting Plaintiff to a low-stress job (defined as occasional decision-making, occasional judgment, and occasional changes in the work setting). *Id*. The ALJ also noted she had given no weight to Dr. Noia's conclusion that the results of his examination appeared to be consistent with psychiatric problems that might at times interfere with Plaintiff's ability to function on a daily basis. *Id*.

In September 2014, Plaintiff's treating psychiatrist Luba Leontieva, M.D., Ph.D., indicated Plaintiff had started mental health treatment at Hutchings Psychiatric Center in February 2014. (T. 577.) Plaintiff had been diagnosed with PTSD and depression. *Id*. Noting that Plaintiff did not speak English and got emotionally overwhelmed easily, Dr. Leontieva opined Plaintiff had marked limitations in the ability to understand, remember and carry out simple and complex instructions and make judgments on simple and complex work-related decisions. (T. 578.) Dr. Leontieva also opined Plaintiff had mild limitations in the ability to interact appropriately with the public, moderate limitations in the ability to interact appropriately with supervisors and coworkers, and marked limitations in the ability to respond appropriately to usual work situations and to changes in a routine work setting. (T. 579.) Dr. Leontieva indicated

9

Plaintiff's ability to carry out sequential tasks was also affected and that the opined limitations were first found present on September 12, 2014. *Id.*

The ALJ gave little weight to Dr. Leontieva's opinion. (T. 27.) The ALJ noted this opinion would normally be given controlling weight because it was from Plaintiff's former treating psychiatrist, but that the record indicated Dr. Leontieva had only examined Plaintiff on one occasion, February 10, 2014, prior to filling out the medical source statement dated September 12, 2014. *Id.* The ALJ indicated she found no support in the treating records of Dr. Leontieva for the conclusion that Plaintiff was incapable of meeting the basic mental demands of work as of September 12, 2014. *Id.* The ALJ also noted Dr. Leontieva's opinion was contrary to Dr. Noia's opinion, Dr. Leontieva had an "extremely limited treating history" with Plaintiff, and Dr. Leontieva assigned a GAF rating of 55 to Plaintiff on February 10, 2014, indicating moderate functional limitations which were totally inconsistent with her opined limitations on September 12, 2014. *Id.*

Plaintiff argues the ALJ failed to properly evaluate Dr. Leontieva's opinion. (Dkt. No. 9 at 13-15.) Plaintiff also argues the ALJ gave great weight to Dr. Noia's opinion but failed to consider the portion of this opinion indicating the results of the exam were consistent with psychiatric problems that might significantly interfere with Plaintiff's ability to function on a daily basis. *Id.* at 17. The Court finds these arguments unpersuasive for the following reasons.

While it is apparent the ALJ misinterpreted the treatment records in indicating that Dr. Leontieva had only seen Plaintiff on one occasion prior to rendering her September 2014 opinion, the Court finds this error by the ALJ harmless. (T. 27, 582-606.) The Court's review of the record does indicate that Dr. Leontieva saw Plaintiff on at least three occasions between Plaintiff's admission screening in February 2014 and the date of Dr. Leontieva's opinion in

10

September 2014.  (T. 550, 553, 556.)  However, as indicated by Defendant, this error by the ALJ was harmless because she clearly did review Plaintiff's treatment notes from this period and provided other valid reasons for discounting Dr. Leontieva's treating source opinion.  (Dkt. No. 12 at 7-8.)

The Court finds the other reasons provided by the ALJ for discounting Dr. Leontieva's opinion are indeed valid.  For example, the record indicates Dr. Leontieva's mental status examination of Plaintiff on September 12, 2014, was essentially within normal limits with Plaintiff reporting she was doing better, was less emotional, and having fewer nightmares.  (T. 590-92.)  Further, the ALJ was entitled to rely upon Dr. Noia's consultative psychiatric opinion in determining Plaintiff's mental RFC as a qualified examining consultative expert in the field of social security disability.  *Frye*, 485 F. App'x at 487; *Little*, 2015 WL 1399586, at *9.  The ALJ's analysis of the opinion evidence indicates careful consideration of these opinions and the related treatment records.

Although Plaintiff argues the ALJ did not consider Dr. Noia's opinion that the results of his exam were consistent with psychiatric problems that might significantly interfere with Plaintiff's ability to function on a daily basis, the Court finds the ALJ properly considered this portion of Dr. Noia's opinion.  (Dkt. No. 9 at 17.)  The ALJ indicated she afforded no weight to this portion of Dr. Noia's opinion, choosing instead to limit Plaintiff to a low-stress-job which the ALJ concluded adequately accounted for the concerns expressed by Dr. Noia regarding Plaintiff's limitations in her ability to deal with stress.  (T. 27.)  Moreover, the ALJ was tasked with the responsibility of reviewing all the evidence before her, resolving any inconsistencies therein, and making a determination consistent with the evidence as a whole.  *See Bliss v. Colvin*, 13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole

responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *Petell v. Comm'r of Soc. Sec.*, 12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *see also Quinn v. Colvin*, 199 F. Supp. 3d 692, 712 (W.D.N.Y. 2016) ("'Although [an] ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'") (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)); *West v. Comm'r of Soc. Sec.*, 15-CV-1042 (GTS/WBC), 2016 WL 6833060, at *5 (N.D.N.Y. Oct. 18, 2016), *Report and Recommendation adopted by* 2016 WL 6833995 (N.D.N.Y. Nov. 18, 2016) (citing *Matta*, 508 F. App'x at 56). Rather than substitute her own opinion for those of Dr. Noia and Dr. Leontieva, the Court finds the ALJ properly considered the various opinions of record and adequately explained the weights afforded to each of those opinions. (Dkt. No. 9 at 14-15.)

For the reasons outlined above, the Court finds the ALJ's analysis of the medical opinions and the resulting RFC are supported by substantial evidence.

### B. The ALJ Did Not Fail in Her Duty to Develop the Record

Although the claimant has the general burden of proving that he or she has a disability within the meaning of the Social Security Act, "the ALJ generally has an affirmative obligation to develop the administrative record" due to the non-adversarial nature of a hearing on disability benefits. *Burgess*, 537 F.3d at 128 (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (citing *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002), *Butts v. Barnhart*, 388 F.3d 77, 383 (2d Cir. 2004), *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000))). "'It is the ALJ's duty to

investigate and develop the facts and develop the arguments both for and against the granting of benefits.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009)). An "ALJ must make every reasonable effort to help [the claimant] obtain medical reports from the claimant's medical sources so long as permission is granted to request such reports." *Hart v. Comm'r*, 07-CV-1270 (DNH), 2010 WL 2817479, at *5 (N.D.N.Y. July 16, 2010) (quoting 20 C.F.R. § 404.1512(d)) (internal quotation marks omitted).

"Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999) (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)). Further, there is no obligation to re-contact a treating physician where the evidence of record is "adequate to permit the ALJ to make a disability determination." *Carvey v. Astrue*, 380 F. App'x 50, 53 (2d Cir. 2010) (citing *Perez*, 77 F.3d at 47-48); *see also* 20 C.F.R. § 404.1520b (indicating that the Commissioner may re-contact a treating physician "[i]f the evidence is consistent, but we have insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled").

"When a claimant properly waives his right to counsel and proceeds pro se, the ALJ's duties are 'heightened.'" *Moran*, 569 F.3d at 112 (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). "The ALJ must 'adequately protect a pro se claimant's rights by ensuring that all of the relevant facts are sufficiently developed and considered' and by 'scrupulously and conscientiously probing into, inquiring of, and exploring for all the relevant facts.'" *Moran*, 569 F.3d at 112 (quoting *Cruz*, 912 F.2d at 11). "And when a claimant appears pro se and is

otherwise impaired, we must 'make a searching investigation of the record to make certain that the claimant's rights have been adequately protected.'" *Id.*

Plaintiff contends the ALJ failed in her duty to develop the record by not recontacting Dr. Leontieva or Dr. Noia to resolve inconsistencies in their opinions and by not obtaining evidence to support the conclusion that if Plaintiff could perform basic work demands, she had the ability to do so on a regular basis. (Dkt. No. 9 at 16-17.) The Court disagrees.

The ALJ fulfilled her duty to develop the record by discussing Plaintiff's medical care and potential treatment records with Plaintiff at the August 2016 administrative hearing, requesting additional treatment records, and entering those treatment records into the administrative record. (T. 43.) At the hearing, the ALJ inquired as to where Plaintiff was seeking medical care so she could get those treatment records. *Id.* The ALJ then indicated that she would get treatment records from Upstate and Hutchings and also had Plaintiff sign a medical authorization to allow the ALJ to do so. *Id.* Further, the record indicates the ALJ secured additional evidence that she entered into the record and proffered to Plaintiff. (T. 472-75, 665-715.)

The ALJ was not required to recontact either Dr. Noia or Dr. Leontieva where, as here, the evidence of record was adequate to permit the ALJ to make a disability determination. *Carvey*, 380 F. App'x at 53 (citing *Perez*, 77 F.3d at 47-48); *see also* 20 C.F.R. § 404.1520b. Again, it was within the ALJ's purview to review the opinions of record and weigh them accordingly along with Plaintiff's testimony, reports, and treatment history to determine her RFC. *Bliss*, 2015 WL 457643, at *7; *Petell*, 2014 WL 1123477, at *10. Further, the Court will not now reweigh that evidence which was before the ALJ. *See Warren v. Comm'r of Soc. Sec.*, 15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying

the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing . . . . [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'"), *Report and Recommendation adopted by* 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016) (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996)); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health & Human Services*, 705 F.2d 638, 642 (2d Cir. 1983)); *Lewis v. Colvin*, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (noting that it is not the role of a court to "re-weigh evidence" because "a reviewing court 'defers to the Commissioner's resolution of conflicting evidence' where that resolution is supported by substantial evidence") (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012); citing *Lamay*, 562 F.3d at 507). The Court finds that the ALJ's overall decision indicates careful consideration of Plaintiff's RFC and the evidence of record.

Accordingly, the Court finds the ALJ fulfilled her duty to develop the record.

### C. Substantial Evidence Supports the ALJ's Credibility Determination

In determining whether a claimant is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations. "An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)). The Second Circuit recognizes that "[i]t is the function of the [Commissioner], not [reviewing courts], to resolve

evidentiary conflicts and to appraise the credibility of witnesses, including the claimant," and that, "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'" *Schlichting*, 11 F. Supp. 3d at 206 (quoting *Carroll*, 705 F.2d at 642; *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)). Due to the fact that the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference. *Weather v. Astrue*, 32 F. Supp. 3d 363, 371 (N.D.N.Y. 2012) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)).

Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (T. 25.) Plaintiff argues the ALJ's credibility determination is not supported by substantial evidence and contends the medical evidence supports her limited daily activities. (Dkt. No. 9 at 17-19.) Again, the Court disagrees.

The ALJ stated in her decision that she considered all symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and SSRs 96-4p and 16-3p. (T. 21.) Further, the ALJ's overall decision indicates she adequately considered the evidence of record including Plaintiff's testimony, her medical treatment, and the medical opinions of record in determining Plaintiff's credibility. (T. 21-27.)

More importantly, the ALJ provided sufficient specific reasons for her credibility determination including her indications that Plaintiff's activities of daily living did not support her complaints of disability and that Plaintiff was able to work for many years at substantial gainful activity levels despite her PTSD. (T. 25, 44-45, 52, 345-46.) For example, the ALJ

16

recounted how Plaintiff reported that she feels good on most days, walks a lot, and interacts with Bosnians. (T. 25, 582-640.) The ALJ also stated Plaintiff's English was noted to have improved in December 2014. (T. 25, 601.) Finally, the ALJ noted Plaintiff reported to her mental health provider in September and November 2015 that she lived in an apartment with her daughter, kept house for both herself and her daughter, and socialized with some friends where she was living. (T. 25, 632, 638.) The multiple reasons and detailed analysis provided by the ALJ in her decision indicate adequate consideration of Plaintiff's credibility.

Therefore, the Court finds the ALJ's credibility determination is supported by substantial evidence.

### D. Substantial Evidence Supports the ALJ's Step Five Finding

The burden shifts to the Commissioner at Step Five "to show there is other work that [the claimant] can perform." *McIntyre*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)). "An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [and]. . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved." *McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)). If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 211 (N.D.N.Y. July 7, 2009) (citing *Melligan v. Chater*, 94-CV-0944, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

17

After determining the RFC, the ALJ found Plaintiff is unable to perform any past relevant work based on the VE testimony. (T. 27-28, 53-57.) The ALJ then found Plaintiff could perform other jobs existing in significant numbers in the national economy including counter supply worker, day worker, and laundry worker, again based on the VE testimony. (T. 28-30, 53-57.) Plaintiff argues the VE's testimony indicating Plaintiff can perform work as a counter supply worker, day worker, or laundry worker conflicts with the Dictionary of Occupational Titles[3] ("DOT") because these jobs require a reasoning level of 2, which involves more abilities than could be performed by someone limited to simple, unskilled tasks as indicated in Plaintiff's RFC. (Dkt. No. 9 at 11-12.) The Court finds this argument unpersuasive.

"[A] reasoning level of 2 is defined as an ability to 'apply commonsense understanding to carry out detailed but uninvolved written or oral instructions' and to 'deal with problems involving few concrete variables in or from standardized situations.'" *Clark v. Colvin*, 14-CV-0073 (TJM/TWD), 2015 WL 1446937, at *10 (N.D.N.Y. Mar. 23, 2015) (quoting DOT, Appendix C). Further, "[r]eviewing courts have held that jobs with DOT reasoning levels of two or three are compatible with limitations to simple and low stress work." *Holland v. Comm'r of Soc. Sec.*, 14-CV-1327 (GTS), 2016 WL 482063, at *10 (N.D.N.Y. Feb. 4, 2016) (citing *Reynolds v. Comm'r*, 11-CV-0778 (NPM), 2012 WL 2050410, at *6 (N.D.N.Y. June 6, 2012); *Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 408-09 (D. Conn. 2012), *aff'd*, 515 F. App'x 32 (2d Cir. 2013); *Cross v. Astrue*, 08-CV-0425 (VEB), 2009 WL 3790177, at *8 (N.D.N.Y. Nov. 12, 2009)). Thus, the Court finds a DOT reasoning level of 2 is not inconsistent with Plaintiff's RFC and there was no conflict between the DOT and the VE's testimony regarding the reasoning level

---

[3] DICTIONARY OF OCCUPATIONAL TITLES (U.S. Dep't of Labor, 4th Ed., rev. 1991).

required of the jobs identified by the VE. The ALJ properly relied on the VE's testimony in determining that Plaintiff could perform other work in the national economy.

Therefore, the Court finds the ALJ's Step Five finding is supported by substantial evidence.

## IV. CONCLUSION

In light of the foregoing, the Court finds the ALJ's decision was based upon correct legal standards, and substantial evidence supports her determination that Plaintiff was not under a disability within the meaning of the SSA. 20 C.F.R. §404.1520(g).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.


Dated: February 6, 2019
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge